CAROLINE WILKINSON, Appellee, v. QUEAL LUMBER COMPANY et al., Appellants.

No. 39450.

JUNE 24, 1929.

*Lehmann, Seevers & Hurlburt,* for appellants.

*B. O. Montgomery* and *Tolbert C. Moore,* for appellee.

FAVILLE, J.—This is the second time this cause has been in

934

this court, the opinion in the former appeal being reported in 203 Iowa 476. The facts are set forth at considerable length in the  opinion filed on the former appeal, and we do not deem it necessary at this time to restate them. After the reversal of said cause, the appellants filed an amendment to their answer, in which they set up that the appellee had assigned her cause of action to the Iowa Congregational Hospital, and that, by reason of such assignment, there was a defect of parties. A copy of the assignment was attached to said amendment to the answer, and the same purports to assign to the said Iowa Congregational Hospital the appellee's claim against the appellants, and to authorize the said hospital "to ask, demand, collect, and receive all sums up to $244.15 and interest." Thereafter, the said hospital appeared in said cause, and filed what is designated a "claim of lien," alleging that the purpose and intention of said assignment were to create a lien upon any funds recovered in said cause "for the security of a certain hospital bill in the sum of $244.15, and interest thereon at 6 per cent, and for no other purpose." Various amendments were filed and orders entered, and eventually an order was made, directing that the Iowa Congregational Hospital and the Iowa Lutheran Hospital be made parties defendant to said action. Subsequently, each of said hospitals appeared as defendants, and filed separate answers. The Iowa Congregational Hospital alleged that it had transferred any interest it had under its said assignment to the Iowa Lutheran Hospital, and prayed that the suit as to it might be dismissed. The Iowa Lutheran Hospital alleged that it held the assignment given to the Iowa Congregational Hospital, and prayed "that the court protect the rights of this defendant under said assignment, and determine its rights under said assignment; that judgment be entered for this defendant against said Caroline Wilkinson, in the sum of $273.43 and interest from date at 6 per cent, and the Queal Lumber Company and Ransom Neel, and determine its rights against the Queal Lumber Company and Ransom Neel, and for costs."

The appellee, replying to appellants' amendment setting up said assignment, pleaded that said assignment "was given to the Iowa Congregational Hospital for the sole purpose of securing a certain hospital bill, in the sum of $244.15, and for no other pur-

pose whatsoever, and that it was the intention of this plaintiff to assign by said assignment $244.15 worth of whatever judgment might eventually be rendered in favor of the plaintiff in this cause of action.''

Thereafter, the appellants filed a motion to transfer said cause to equity, which motion was overruled. Later, the said Iowa Lutheran Hospital filed a petition of intervention in said cause, setting up said assignment, and alleging:

''That this intervener, Iowa Lutheran Hospital, states that they claim no interest whatsoever in the cause of action of the plaintiff against the defendant, but that the intent, purpose, and meaning of said assignment executed to the Iowa Congregational Hospital on the 13th day of October, 1925, and the sole and only purpose of said assignment to the Iowa Congregational Hospital, was an interest in any judgment which might be recovered by the plaintiff or Wm. Wilkinson against the Queal Lumber Company in cases Law-34947 and Law-34948, up to the sum of $244.15 and interest at 6 per cent from October 13, 1925. The intervener, Iowa Lutheran Hospital, further states that it has no interest and claims no interest in the controversy except as first lien on any judgment that may be recovered by this plaintiff against the defendant in the aforesaid mentioned cause.''

The prayer of this petition was that, in the event that the plaintiff recovered judgment against the defendants, the intervener's claim might be established as a lien on said judgment.

Appellants again moved that the cause be transferred to equity, which motion was overruled.

I. The first question for our consideration is the alleged error on the part of the court in refusing to sustain the motion to transfer said cause to equity. The appellants rely upon the familiar rule that a single cause of action may not be split so as to permit the bringing of successive actions, without the consent of the debtor. The rule is announced and the cases are collected in *Kinart v. Seabury Co.*, 191 Iowa 937. In said case we said:

''We see no reason why, as held in many jurisdictions (*Grain v. Aldrich*, 38 Cal. 514, *Singleton v. O'Blenis*, 125 Ind. 151 [25 N. E. 154], *Allard v. Orleans Nav. Co.*, 14 La. 27), actions may not be brought in this state by the assignor and as-

signee jointly, or why plaintiff may not have brought his action in equity, joining the assignee as a defendant, and obtained a complete adjudication of their respective interests in the claim. Section 3460, Code; *Boles v. Jessup,* 57 Ark. 469 (21 S. W. 880) ; *Hobart v. Andrews,* 21 Pick. (Mass.) 526; *Kramer v. Wood* (Tenn.), 52 S. W. 1113. Therefore, had the court sustained defendants' motion for a new trial, plaintiff would have been compelled either to join his assignee with him as plaintiff in the pending action or to make it a defendant, and move that the issues be tried in equity.''

Appellants lay stress upon the last sentence quoted, as controlling the instant case. The theory of appellants is that, under the rule announced in the *Kinart* case, it was essential, in order for the appellee to maintain the action in the instant case, that the Lutheran Hospital should have been made a party plaintiff; or that, if this was not done, it was incumbent upon the appellee to make said hospital a party defendant, and to then move to transfer the cause to equity. But the record does not present a situation in the instant case requiring such procedure. The appellants first raised the question of the assignment. Thereupon, by order of court, the assignee was brought into the case as a defendant. The assignee also appeared as an intervener, and expressly disclaimed any interest under its assignment in the cause of action. It affirmatively pleaded that the only interest it claimed under said assignment was not a right in the cause of action against the appellants, but simply a ''claim to a lien'' upon any judgment that might be obtained in behalf of the appellee in said action. In this view of the record, we do not think that the court erred in overruling appellants' motion to transfer said cause to equity. The only equitable issue that was presented by the answer of the appellants, setting up said assignment, and the petition of the hospital as an intervener, was the claimed right to establish a lien upon any judgment that might be obtained, to a certain amount. It was affirmatively claimed that said assignment was only intended as security upon any such judgment so obtained, and hence not as creating a joint ownership in the cause of action. Under the pleadings, there was no splitting of the cause of action, and the intervener claimed no right in the cause of action. As we understand the record, the

equitable issue as to whether or not any *lien* could be established in behalf of the intervener against the judgment that was eventually obtained was determined by the court as a separate and distinct equitable issue. Under the record in this case, we hold that the court did not err in refusing to transfer said cause in its entirety to equity for trial.

II. It is contended that the appellee Mrs. Wilkinson was guilty of contributory negligence, and that, because thereof, the trial court should have directed a verdict in behalf of the appellants. The evidence upon this trial differed somewhat from the evidence on the former trial, but not in such a material respect as would require the court to direct a verdict in behalf of the appellants. The record presented a question for the jury for determination as to the contributory negligence of the appellee.

III. Under the undisputed evidence, the appellant Queal Lumber Company owned the automobile in question, and furnished it to the appellant Neel, who was in the employ of the Queal Lumber Company, and, at the time in question, was driving the car with the permission and consent of said company. The appellee offered testimony with regard to a conversation claimed to have taken place between a witness and Neel several days after the accident. The following is the record:

"Q. What did Mr. Neel tell you? (That is objected to as incompetent, irrelevant, and immaterial, leading and suggestive, and the further objection on behalf of the Queal Lumber Company that as to it is purely hearsay, not binding on it, and that the defendant Neel had no authority to make a statement or to bind this defendant by any statements. The Court: Overruled. Defendants except.) A. Her body was lying between the hood and the fender, right-hand side of the front of the car. Q. Now, was anything said by Mr. Neel at that time as to how the accident happened? (Same objection on the part of each defendant. The Court: Overruled. Defendants except.) A. Mr. Neel said that he really didn't know how it happened; that he saw her and hit her at the same time."

Another witness testified to a conversation he had with Neel after the accident, and in regard thereto, the record is as follows:

938

"Q. And what, if anything, did Mr. Neel say as to how it happened,—how it took place? (That is objected to as on behalf of the defendant Neel as incompetent, irrelevant, and immaterial and hearsay. The Court: Overruled. Defendant excepts. And for all of those reasons by the Queal Lumber Company, and for the other reasons that it is not binding on the defendant Queal Lumber Company in any way, and Mr. Neel had no authority to bind it, nor, as far as that was concerned, to make any statement concerning the transaction. The Court: Overruled. Defendants except.) A. What was the question? (Question read by the reporter.) A. Well, he discussed the weather and the rain, and he said, in the course of the conversation, that he was willing to admit that he may have been driving faster than he should have been, and he was not keeping a sharp lookout. I remember that distinctly, because it was very much to the point. (The defendants and each of them separately move to strike out the answer, for the reasons urged in the respective objections, and for the further reason that the answer has no evidentiary or probative value, a mere statement of a conclusion, and the statement related invades the province of the jury. The Court: Overruled. Defendants except.)"

The point made is that the appellant Neel was the employee or the agent of the appellant lumber company, and that declarations and admissions of Neel with regard to his negligence in operating the automobile at the time in question were not admissible against the appellant lumber company.

The appellant lumber company was the owner of the car that caused the injury to appellee. It was being driven by Neel with the consent of the owner, and, under the statute (Section 5026, Code of 1924), the owner is liable for injuries that resulted by reason of the negligence of the driver. The appellee saw fit to sue the owner and the driver jointly. She doubtless could have sued each separately. In order to hold the lumber company liable, the appellee was required to establish the negligence of the driver of the car. The driver was a party defendant. His admissions or declarations as to his conduct were properly admissible *as against him,* for the purpose of showing his negligence.

The question at this point is whether or not such admissions or declarations are admissible as against the lumber company.

While the liability of the owner of the car is created by statute, we see no logical reason why the same rule should not apply here as in the case of action against a master for negligence of a servant, or the case of joint tort-feasors. While the liability in this action is statutory, and is not, strictly speaking, within the rule of *respondeat superior*, still the same general rules of evidence apply. The owner must be held liable, if at all, because of the negligence of the driver of the car. Negligence on the part of the driver must be established *against the owner* by the usual and ordinary rules which pertain in establishing liability of a master for the negligence of his servant. In the instant case, the evidence complained of was admissible as against the driver of the car. But it was not admissible to bind the owner as proof of the negligence of the owner. The action having been brought against the appellants jointly, the evidence was admissible, but it was binding only upon the appellant Neel. The court should have limited its application, by a proper instruction, to the appellant Neel only. The appellants requested a proper instruction limiting the applicability of the evidence of said admissions of the appellant Neel. This was refused, and such refusal constitutes reversible error.

Other errors complained of are not likely to occur upon a retrial.

The judgment is—*Reversed.*

ALBERT, C. J., and DE GRAFF, MORLING, WAGNER, and GRIMM, JJ., concur.

STEVENS and KINDIG, JJ., dissent.